IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 0:22-cv-60425

IOU CENTRAL, INC.
d/b/a IOU FINANCIAL, INC

       Plaintiff,

vs.

MICRONESIA IMPORTS LTD
a/k/a PACIFIC CLASSIC;
ARCHIE J. MCCOY;
EXPEDIA FINANCIAL CONSULTANTS
D/B/A REGROUP PARTNERS, INC.;
SIERRA FREEMAN;
MICHELLE M. KAUFMAN;
SECURE ACCOUNT SERVICE, LLC;

       Defendants.

_____/

## **COMPLAINT**

Plaintiff IOU sues the Defendants as follows:

1.     Plaintiff is incorporated in Delaware, whose principal place of business is located in Georgia, which is a citizen of both states per 28 U.S.C. § 1332.

2.     Defendant McCoy is domiciled in and a citizen of Hawaii who is the owner and sole member of Micronesia Imports LTD, an unincorporated entity [Business].

3.     Expedia/Regroup is incorporated in Florida, its principal place of business and Defendants Freeman and Kaufman are domiciled in and citizens of Florida [RPI Defendants].

4.     Defendant Secure [SAS] is a limited liability company whose sole members are Stephen Stafford and Kim Stratford, individuals domiciled in and citizens of Arizona.

5.     Defendants have authority to act as agents on behalf of each other, such as the transactions, acts and omissions at issue.

6.      Per § 1332, jurisdiction exists in this case based upon diversity of citizenship between the parties and the amount in controversy exceeds $76,000.00, such as relief in law or equity. Per § 1367, jurisdiction exists over all claims. The case concerns debt, property and relief valued in excess of $76,000.00, including damages and fees recoverable by contract and statute.

7.      Under 28 U.S.C. § 1391 and § 89, venue is proper as a substantial part of the events or omissions giving rise to the claims occurred here or Defendants consented to this venue.

8.      Personal jurisdiction exists and is otherwise proper under § Fla. Stat. 48.193 *et seq* and the Constitution as to all Defendants, their property and assets. They regularly engage in foreseeable, intentional, continuous, and systematic contacts here, reside here, conduct business or perform work here, contract with citizens here or own property here. They have sufficient minimum contacts, in general and as to this case. Their specific contacts relate to or gave rise to the claims at issue, who availed themselves to this forum and could anticipate being sued here. Debtor and Business transact their nationwide import business including here and did business here with the RPI/SAS Defendants under agreements at issue here. The RPI/SAS Defendants were retained by Debtor/Business here, directed their intentional misconduct from here, aimed at and calculated to injure Plaintiff from here.  The RPI and SAS Defendants did business in Broward County, Florida from least 2018-2021, at issue here, through continual telephonic, electronic and written communications between them. Jurisdiction over them here does not violate their right to due process or offend traditional notions of fair play and substantial justice.

9.      The RPI Defendants conduct a debt business as an enterprise, sharing its offices, officers, staff, property and assets. They occupied offices based in the same location. They share common ownership, management and finances. Their debt business requires the services of SAS

with whom they constitute an enterprise. Debtor, and Business similarly constitute an enterprise namely their nationwide export business.

10.     Business and Debtor, applied for a commercial loan [Loan] at Plaintiff's Georgia office. They represented in the application process that Debtor[s] could bind the Business, had the ability and intent to comply with the Loan, whose application information was truthful, upon which Plaintiff materially relied, which they adopted and ratified.

11.     On or about 6/28/19 [Closing], Business, through Debtor, executed and delivered a Note to Plaintiff for a gross loan amount/principal sum of $444,000.00 at Plaintiff's Ga. office, in exchange for its Funds with a loan guaranty fee, confirming all information in the loan application which Business and Debtor assumed, adopted and ratified [Note ¶¶ 1-5].

12.     The Note is breached and in default if (i) its amounts are not received when due; (ii) Business breaches its warranties, representations, covenants, terms or conditions (iii) default under any guaranty or instrument, to enhance the Loan's underwriting; a bankruptcy, insolvency or receivership proceeding is commenced by or as to Business and not dismissed within 30 days (iv) Business ceases to exist (v) obtains another loan without written permission [Note ¶ 6].

13.     The Note is the unconditional legal obligation of Business to satisfy the Loan, with all others who become liable for it, such as Debtor who assumed, adopted and ratified the Note and waived any defenses to the Note, aside from payment, which provides:

> _Borrower and all others_ who become liable for the payment of all or any part of the amounts due under this Note do hereby severally waive: (i) presentment and demand for payment; (ii) notice of dishonor, protest and notice of protest, acceleration and intent to accelerate, non-payment and all other notices of any kind, except for notices expressly provided for in this Note; and (iii) _any defense, including but not limited to the defense of the statute of limitations in any action or proceeding brought for the  obligations due, arising under or related to this Note aside from the defense of payment in full._ No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower under this

Note or the right of Lender to take further action without further notice to Borrower. [Note ¶13].

Borrower is and shall be obligated to pay principal, interest and any other amounts which shall become payable hereunder *absolutely and unconditionally and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or setoff* [emphasis added] [Note ¶14].

14.     The Note is governed by Georgia law and all others who are or become liable for or are bound by the Loan are subject to jurisdiction and venue in any action arising from or relating to the Loan [Note ¶¶ 20, 23-24] which Business and Debtor ratified.

15.     The property and assets of Business, with and all others who are or become liable for or are bound by the Loan, are encumbered as its collateral under a Security Agreement in the Note, which Business and Debtor assumed, adopted and ratified, which provides:

As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible and (1) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions: and (2) all other tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes, (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections thereof and all records and data relation thereto [Note ¶ 21].

16.     The Note and Security Agreement are enforceable by remedies such as but not limited to repossession, replevin, judicial foreclosure or prejudgment or provisional remedies relating to any collateral, security or property interests of Business and Debtors for debt owed under the Loan [Note ¶ 25] which Business and Debtors assumed, adopted and ratified.

17.     On or about the Closing, Debtor executed and delivered a Guaranty of the Note and Security Agreement to Plaintiff's office, confirming all information in the loan application process which Business Debtor assumed, adopted and ratified [Guaranty p. 1].

18.     The Guaranty is breached and in default based upon a breach of and default on its terms or any breach of and default on the Note [Guaranty p. 1].

19.     The Guaranty is the unconditional legal obligation of Debtor to satisfy the Loan, with all others who become liable for it, their estates, executors, administrators, heirs, successors and assigns, who assumed, adopted and ratified the Guaranty and waived any defenses to it aside from payment, which provides:

> In consideration of the loan made by Lender to Borrower, Guarantor hereby *absolutely and unconditionally guarantees both payment of, and collection of, the Guaranteed Debt when due under the terms of the Note. Guarantor will pay the Guaranteed Debt in full, without setoff or counterclaim upon Lender's demand*. [emphasis added] This Guaranty shall not be affected by the genuineness, validity, regularity or enforceability of the Note, or by circumstances relating to the Note that *might otherwise constitute a defense to this Guaranty*. Guarantor acknowledges that there may be more than one Guarantor of the Guaranteed Debt and agrees that, in such circumstances, each Guarantor shall be joint and severally liable for the Guaranteed Debt. [Guaranty ¶ 2].

> This Guaranty is a *continuing and irrevocable* guaranty of the Guaranteed Debt and shall remain in full force and effect until the Guaranteed Debt, and any other amounts payable under this Guaranty, are paid in full. This Guaranty shall continue to be effective, or be reinstated, as if such payment had not been made, if at any time any payment of any portion of the Guaranteed Debt is rescinded or must be restored or returned by Lender to Borrower upon the insolvency or bankruptcy of the Borrower or otherwise This Guaranty shall: (i) bind Guarantor and Guarantor's executors, administrators, *successors and assigns*, [emphasis added] provided that Guarantor may not assign rights or obligations under this

Guaranty without Lender's prior written consent; and (ii) inure to the benefit of Lender and its successors and assign [Guaranty ¶ 3].

*Guarantor and all others* [emphasis added] who become liable for the payment of all or any part of the amounts due under this Note severally waive: (i) presentment and demand for payment; (ii) notice of dishonor, protest and notice of protest, acceleration and intent to accelerate, non-payment and all other notices of any kind, except for notices expressly provided for in this Note; and (iii) any defense in any action or proceeding brought for the obligations due under this Guaranty aside from the defense of payment in full. No notice to or demand on Guarantor shall be deemed to be a waiver of the obligation of Guarantor under this Guaranty 5 or the right of Lender to take further action without further notice to Guarantor. [Guaranty ¶ 8].

20.     The Guaranty is governed by Georgia law and all others who are or become liable

for or are bound by the Loan are subject to jurisdiction and venue in any action arising from or

relating to the Loan [Guaranty ¶¶ 10, 12] which Debtor adopted and ratified.

21.     The property and assets of Debtor with all others who are or become liable for or

are bound by the Loan, was encumbered as its collateral under the Security Agreement in the

Note, which Business and Debtor assumed, adopted and ratified as the Guaranty states:

Guarantor agrees that the Guaranteed Obligations shall consist of all obligations of any Borrower under the Note, including: (i) the Principal Note Amount and Loan Guaranty Fee; (ii) Note Interest; (iii) Default Interest; (iv) Late Charges, (v) Insufficient Funds Charges; (vi) *the Security Agreement in the Note, which is secured by Guarantor's property to the same extent as the Borrower's property under the Security Agreement and the provisions of which are hereby incorporated by reference against the Guarantor as if the Guarantor had executed the Security Agreement in the Note;* (vii) any amounts owed as a consequence of a declared Event of Default and acceleration by Lender; and (viii) Lender's other costs and expenses of enforcing the Note including, but not limited to, attorneys' fees, and the costs of any court/arbitration proceeding to enforce the Note against Borrower[Guaranty ¶1].

22.     Plaintiff may enforce the Loan as to Debtor and all others who become liable for

and are bound by the Loan under the Guaranty, such as Business and Debtor, with its same

methods and remedies in the Note such as the Security Agreement [Guaranty ¶ 11, 14, 20].

23.    At the Closing, Debtor executed a Debit Agreement with Business to Plaintiff, authorizing Loan payments from their account into Plaintiff's account, certifying its purpose and their account, which Business and Debtor ratified and adopted.

24.    At the Closing, Business and Debtor received the Loan Funds by wire transfer into their account from Plaintiff's account to which they ratified.

25.    Business and Debtor assumed and adopted and ratified the Note, Guaranty, Security Agreement and any Modifications [Instruments]. Upon information, Business and Debtors used the Funds for improper purposes to maintain or purchase property subject to the Loan, for which they are liable. They obtained the Loan as part of their business,

26.    The Instruments secure and encumber the property and assets of Business and Debtor such as but not limited to the below property as part of their enterprise:

(a)    Any real or personal property owned by them.

(b)    Their interests in any other business, of which they are agents, owners, members and officers which they owned at any time.

(c)    Any property and assets encumbered by other debts of Business/Debtor, satisfied by the Loan, into which Plaintiff is subrogated, such as a Fundkite Loan for $199,362.00 and an EBF Loan for $23,753.00 [Prior Loans].

(d)    These and other properties and assets of Business and Debtor are not subject to a homestead or other protection or exemption, waived by the Instruments or their misconduct, which were purchased, improved or maintained with the Funds or otherwise invalid.

(e)    The properties and assets of Business and Debtor are subject to any UCC-1 or other notice as to the Loan and Instruments by Plaintiff and are subject to jurisdiction here.

27.     The Instruments, when read together, are the commercial Loan, that "absolutely and unconditionally" promises its "payment and collection" [Note ¶¶ ¶ 2, 14, Guaranty ¶¶ 1-3]. Business and Debtor are "liable for its amounts due" [Note ¶ 13, Guaranty ¶¶ 3, 8]. It bars their counterclaims, offsets and defenses except payment [Note ¶ 13-14, Guaranty ¶¶ 2, 8]. It provides for payment of interest, costs, charges and fees [Note ¶¶ 2, 5, 8, 10, Guaranty ¶¶ 1,7]. It is enforceable by remedies Plaintiff may simultaneously pursue, including on the debt and Security Agreement [Note ¶¶ 21, 25, Guaranty ¶¶ 1, 11, 14, 20]. It was ratified by Business and Debtor.

28.     Business and Debtor breached and defaulted on the Instruments, such as but not limited to misrepresentations when obtaining the Loan, defaulting just after the Closing, failing to disclose their debts, failing to make payments, obtaining unapproved loans, dissipating, disposing of and benefitting from property and assets secured by the Loan such as theirs. They did so to impair, hinder, delay and prevent enforcement of the Loan, to defraud Plaintiff after the Closing, which they did not cure even after demand by Plaintiff. These matters require equitable relief, for which there is no adequate legal remedy for which they are liable. The breach of the Instruments was unlawfully procured by the RPI Defendants as detailed further here.

29.     Plaintiff owns and holds the defaulted Instruments, which has standing to enforce them prior to commencing suit, whose principal balance and value exceeds $76,000.00, with attorney's fees, pre-judgment interest and other charges provided by law and their terms [Note ¶¶ 2, 5, 7, 8, 9, 10, 12, Guaranty ¶¶ 1, 7].

30.     Plaintiff reasonably relied upon the representations of Business and Debtor and paid the Funds to them, which closed the Loan with them.

31.     Business and Debtor accepted the Funds, are fraudulently, wrongfully or unjustly enriched with them at Plaintiff's expense, retaining them, their property and assets.

32.     Business and Debtor are indebted to Plaintiff for the Funds, of which their property and assets are secured as collateral per the Instruments.

33.     All interests in the property and assets of Business and Debtor are subject to, subordinate and inferior to Plaintiff's interest, of which they had notice or knowledge, who will not be prejudiced or subjected to injustice by the relief sought.

34.     All conditions precedent to suit to occurred, were fulfilled, or waived, or their occurrence or fulfillment were unnecessary or futile.

### COUNT I: ENFORCEMENT OF SECURED INSTRUMENTS AS TO BUSINESS AND DEBTOR

35.     ¶¶ 1-34 are incorporated.

36.     The Instruments are intended to bind the recipients and beneficiaries of the Funds, such as Business and Debtor which they assumed, adopted and ratified.

37.     The Instruments are secured by all property and assets of Business and Debtor by their terms and or due to their conduct, which they assumed, adopted and ratified.

38.     Business and Debtor breached the Instruments, requiring enforcement of the Instruments as to their property and assets, per the terms of the Instruments or based upon their conduct. Business and Debtor accepted the Funds, which they wrongfully retain, who are otherwise unjustly enriched by retaining them with their property and assets.

39.     Business and Debtor cannot enjoy any beneficial interest in their property and assets without violating equitable principles, due to their misconduct.

40.     The Instruments are enforceable as to the property and assets of Business and Debtor as a secured debt, for which there is no adequate legal remedy, requiring equitable relief, which will not prejudice anyone, reflecting the obligations of the Defendants under the Loan.

41.     Per 28 U.S.C. § 2201 *et seq* and applicable law, Plaintiff requests that the Court declare and establish Business and Debtor are liable for the Instruments, as a secured interest in their property and assets, enforceable as an equitable lien or mortgage, constructive trust or like remedy, and Plaintiff is subrogated into any prior loans, without waiver of its other remedies, relating back to their execution, granting all just relief, such as its other relief.

## COUNT II: BREACH OF INSTRUMENTS
## AS TO BUSINESS AND DEBTOR

42.     ¶¶ 1-34 are incorporated.

43.     Business and Debtor ratified the Instruments by accepting the Funds for which they are liable as co-guarantors and obligors.

44.     Business and Debtor breached the Instruments, failed to make payments, who did not otherwise comply with their terms, which are now in default and due.

45.     Plaintiff accelerated the principal balance of its defaulted Instruments of which Business and Debtor were given notice or notice was not required or is futile and the Instruments provide for payment of Plaintiff's attorney's fees and costs.

46.     Per O.C.G.A. § 13-1-11, Business and Debtor are notified unless all principal, interest and other charges due under the Instruments are paid within 10 days of service of this Complaint, then Plaintiff can enforce and invoke the fees provisions of the Instruments and they will be indebted for Plaintiff's fees and costs.

47.     Per O.C.G.A. § 7-4-16, Plaintiff is entitled to prejudgment interest with any charges as provided by the Instruments and as provided by law.

48.     Plaintiff demands judgment for its damages on the Instruments as to Business and Debtor for their principal balance, plus fees, interest, costs and its other charges, plus all just relief such as its other equitable remedies.

## COUNT III: UNJUST ENRICHMENT
## AS TO BUSINESS AND DEBTOR

49.      ¶¶ 1-34 are incorporated.

50.      Business and Debtor induced and encouraged Plaintiff to confer the Funds upon them through Debtor which they assumed, adopted and ratified.

51.      Plaintiff provided the Funds to Business and Debtor expecting their repayment through Debtor, of which they appreciated, consented, benefitted and ratified.

52.      Business and Debtor retained the Funds which should be repaid, who are otherwise unjustly enriched by them at Plaintiff's expense.

53.      Per O.C.G.A. § 7-4-16, Plaintiff is entitled to prejudgment interest and other costs and charges as provided by law.

54.      Per O.C.G.A. § 9-2-7 and applicable law, Plaintiff demands judgment as to Business and Debtor for the Funds, costs and all just relief, such its other equitable remedies.

## COUNT IV:  MONEY HAD AND RECEIVED
## AS TO BUSINESS AND DEBTOR

55.      ¶¶ 1-34 are incorporated.

56.      Business and Debtor wrongfully induced payment of the Funds which they received, hold and which rightfully belong to Plaintiff.

57.      Business and Debtor should not retain and unjustly enrich themselves at Plaintiff's expense with the Funds to which Plaintiff is entitled in good conscience and equity.

58.      Plaintiff made demand for repayment of the Funds upon Business and Debtor which was refused and/or unnecessary and/or futile.

59.      Plaintiff demands judgment as to Business and Debtor for the unpaid balance of the Funds, plus interest, costs and all just relief, including its equitable remedies.

<u>**COUNT V: UPL/TORTIOUS INTERFERENCE**</u>
<u>**AS TO RPI AND SAS DEFENDANTS**</u>

60.     ¶¶ 1-34 are incorporated.

61.     Fla. Bar Reg. 10-2.1, prohibits the unauthorized practice of law [UPL] in Florida by individuals and business entities as defined by statute, court rule and case law.

62.     Fla. Bar Reg. 10-7.1 provides a cause of action for victims of UPL to recover damages, costs and other relief against those who commit UPL.

63.     ***<u>Shore v. Wall</u>***, 265 So. 3d 447, 454-455 (Fla. 2018) held a non-attorney committed UPL by enforcing an assignment/agreement to assist person in obtaining tax proceeds as "A non-lawyer cannot prepare a document for another which affects their important legal rights" and "non-lawyers cannot hold themselves out as lawyers."

64.     ***<u>Fla. Bar v. York</u>***, 689 So. 2d. 1037, 1038 (Fla. 1996) held a non-attorney committed UPL by resolving claims for persons "by listening to their verbal recitation of what occurred, reviewing reports, reviewing statutes, writing letters, sending fax memos and serving as a representative to accept responses from those demands had been made upon and offering to accept payments from them is as a matter of law doing those things that only a licensed attorney at law or a public adjuster is legally authorized to do."

65.     ***<u>Fla. Bar v. We the People Forms & Serv. Ctr. of Sarasota Inc</u>***., 883 So. 2d. 1280 1282 (Fla. 2004) held a non-attorney committed UPL by providing legal advice, services and assistance for persons including "corresponding with opposing parties or the attorneys of opposing parties as the representative of a customer in a legal matter."

66.     ***<u>Fla. Bar. v. TLKD Services, LLC</u>***, 326 So. 3d. 1073, 1080 (Fla. 2021) held a non-attorney LLC committed in UPL by "advertising and selling legal services of lawyers" over which it "exercised a degree of control" and the "services they provide."

67.     _**Fla. Bar v. Lister**_,662 So.2d. 1241 (Fla. 1995) held a non-attorney committed UPL by preparing legal documents for clients who "improperly created and used a power of attorney in an attempt to represent" a client "in legal matters" whose actions caused his clients to "loose substantial sums of money" [whose correspondence and actions also indicated he was an attorney] "A power of attorney may not be used to circumvent state law prohibitions on the unauthorized practice of law." _**Ferguson v. Berryhill**_, LEXIS 219166, *2 (S.D. Fla. 2017)

68.     _**Fla. Bar v. Beach**_, 675 So. 2d. 106, 109 (Fla. 1996) held an attorney and a non-attorney committed UPL as the non-attorney "acted as a conduit for giving legal advice by obtaining and relaying, without supervision, case-specific information to persons whom the attorney never met or consulted" and they illegally split fees.

69.     _**In Re UPL Advisory Opinion No. 2003-1**_, 623 S.E. 2d. 464 (2005) held that debt relief companies and those operating under them committed UPL in Georgia by communicating with debtors to assess their ability to pay debts and negotiating settlement of those debts with the creditor as an 'authorized agent' of the debtor, including under the guise of a power of attorney.

70.     O.C.G.A. § 18-5-1 _et seq,_ the Ga. Debt Adjustment Act [DAA], provides that debt settlement companies cannot charge a debtor-clients a fee higher that 7.5 % of the sum paid monthly by the debtor to their creditors.

71.      O.C.G.A. § 18-5-1 _et seq_ requires debt settlement companies to distribute funds from Debtor within 30 days after receiving them, minus authorized fees under the DAA.

72.     O.C.G.A. § 18-5-3.1 requires debt settlement companies to compile and file annual audits of their accounts and file their insurance policies with the Georgia Department of Law Consumer Protection Division.

73.     O.C.G.A. § 18-5-4 provides that a violation of the DAA is a misdemeanor and a violation of the Fair Business Practices Act, which is also actionable at law.

74.     The RPI and SAS Defendants are part of an industry known as "debt relief companies" who falsely promise debtors to 'resolve' their debts but nearly always leave a debtor in a worse position. Such companies misuse legal terms such as "debt consolidation," [negotiating and executing an agreement to combine several debts into a single debt] and "debt restructuring" [negotiating and executing a new agreement on a particular debt] and "debt settlement" [negotiating and executing an agreement for a reduced sum on a debt]

75.     "Debt relief companies" instead illegally interfere with and procure breaches of legal debt relationships between lenders and debtors, which instruct debtors to switch bank accounts, cease payments and cease contact with lenders, to dispose of and fraudulently transfer property and assets, while charging debtors exorbitant fees. Debt relief companies then cease communications with the debtor and lender, leaving their legal relationship irreparably damaged.

76.     The RPI/SAS Defendants are not authorized to practice law in any jurisdiction.

77.     The RPI Defendants claim to help debtors to "*restructure* merchant cash advance debt, if merchant cash advances are killing your business cash flow" whose "*advisors* are experienced with reverse *consolidation* and debt *settlement* options" and "offer ways to free up your funds in an effort to restore your peace of mind." https://regrouppartners.com/.

78.     The RPI Defendants claim to be "an *attorney*-based firm, our process fluid, we are working on the *case* from day one. *We answer any and all claims that have been filed against the business. This is very important as there is only 30 days to respond to a filed lawsuit.*" https://regrouppartners.com/about-us/.

79.     The RPI Defendants claim that "When you entrust in our services to *restructure* business debt for your company, *you will get out* from under the cloud of overwhelming business loan terms, merchant cash advances and credit card payments. We know you made the best decisions you could to keep your business going; however, *our main objective is to help secure the future of your business by restructuring, consolidating or settling your debt*. In due time, we will be able to *help you qualify for traditional business financing, based on your improved business credit score*." https://regrouppartners.com/restructuring-business-debt/

80.     Michelle Kaufman and Claudia Mathis are non-attorney owners/shareholders of the fictious entity, Regroup, organized with the Florida Secretary of State on 8/6/18 as Expedia Financial Consultants, Inc. dissolved on 10/12/21 but still operating, who offer and provide their "services" for individuals and businesses nationally from here. Their website omits these facts.

81.     Upon information, the RPI Defendants made unsolicited communications to Business/Debtor from Florida, to obtain them as "clients" promising them unjustified, favorable results to reduce the Loan balance by 60-80%, based on exorbitant, illegal fees.

82.     Upon information, the RPI Defendants made their "clients" including Business and Debtor, execute a "Debt Restructuring and Settlement Agreement" by which they retained the RPI Defendants to "*deflect* aggressive collection actions from Client's creditors" and to "*negotiate* with Client's creditors or other parties to reach *settlements* in amounts less than the full balance owed and in line with the Budget and objectives outlined in the Program."

83.     The RPI "Agreement" provides for a fee of 25% of the "enrolled business debt" payable to the RPI Defendants [the "Retainer."] to which Business and Debtor agreed.

84.     The RPI "Agreement" provides for retention of an outside attorney by the RPI Defendants, whose legal fees will be paid from the monies paid by a Client under the Agreement [meaning fees under the Agreement are split between the RPI Defendants and the attorney].

85.     The RPI "Agreement" includes an illegal power of attorney by a client to the RPI Defendants to 'contact creditors/agents or other third parties to negotiate any debts and provide other services" to which Business and Debtor agreed and the RPI Defendants ratified.

86.     The RPI Agreement has an illegal "Covenant to Hold Harmless" in which a client *"waives any claims"* against the RPI Defendants and *"holds them harmless" from any adverse effects that arise from enrollment in the Program"* to which Business and Debtor agreed.

87.     The RPI Agreement is governed by Florida law and subject to enforcement in any court in Broward County to which Business and Debtor agreed and the RPI Defendants ratified.

88.     Upon information, the RBI Defendants after their retention, immediately advised Business and Debtor to "stop payment on all lenders currently set on ACH to debit money from your bank account" to block Plaintiff's debt access and "open a secondary business account."

89.     SAS is an "independent account administration company offering competitive rates" that "*specializes in consolidation*" and *offers "client trust accounts to consumers."* https://www.linkedin.com/company/secure-account-service/about.

90.     The RPI Agreement requires a client to execute a "Trust Accounting Agreement and Disclosure Statement with SAS" under which a client must deposit funds into a "non-interest bearing trust account." Under the SAS Agreement, a client's funds are disbursed to RPI Defendants "according to the terms of the RPI Agreement and/or settlement letter" and a client's failure to approve disbursement can result in a "charge to a client's debt program" with the RBI Defendants. This "account" places money of debtors beyond the reach of their creditors.

91.     Upon information, the RPI Defendants made their clients, including Debtor and Business execute the SAS Agreement, per the established business relationship between RPI and SAS from at least 2018-2021, requiring continuous telephonic, electronic and written communications between them, during which they acted as agents for each other.

92.     The SAS Agreement requires a client to pay an account set-up fee, a monthly service fee, a fee for schedule changes and *a fee based on a portion of each settlement obtained for a client by the RBI Defendants* [fees are split by the RBI Defendants, their attorney and SAS]

93.     Claudia Mathis stated as follows in response to a Google review of Regroup:

"*We do have 2 of the top business debt attorneys in the business and one has actively gone after predatory lenders like Par Funding and WBL just to name a few*. Covid affected hundred of thousands of small businesses and many with merchant cash advances. Because of the predatory lending practices, high interest rates and fees, and Covid, *we were able to settle all your lenders*. This is the best time to take advantage of the environment and get you and your business the breathing room and cashflow you need. *For a free consultation with me or one of our business debt advisers*, please call us at (954) 234-2300. Thanks for the rating and we look forward to serving you in the future. Claudia."

94.     There is no legal cause of action for "predatory lending" and the RPI website does not disclose its 'attorneys' who cannot practice law with the RPI Defendants.

95.     In September 2019 the RPI Defendants responded to a negative BBB review and stated they "released" a client from their "agreement" which requires their service fee  be "paid over the first 7 months" of its term, their *"Letter of Representation"* and "*Power of Attorney"* are "automatically sent to all debtors enrolled their program" which requires a "minimum debt load limit of $100,000.00" and the client "did not make single payment into *their trust account for any settlement efforts"* and "failed to pay their *retainer* in full" and their *"legal counsel* was not successful in obtaining pertinent legal documentation needed for settlement purposes."

96.     The RPI and SAS Agreements constitute the "program" at issue here to which the Defendants adopted, consented and ratified.

97.     Upon information, the RBI and SAS Defendants conducted their "program" their enterprise in Florida, from at least 2018-2021, during the time of performance of the Loan which required continuous telephonic, electronic and written communications between them.

98.     The central purpose of "the program" for the RPI/SAS Defendants was to obtain and use money from their "clients" to earn interest while stopping payments to creditors as long as possible, so the RPI and SAS Defendants receive the majority of money for their "services."

99.     The RPI Defendants were illegally retained by Business and Debtor in Florida under the "program" to forestall and interfere with the Loan under which SAS was also retained.

100.    The RPI Defendants illegally assessed the ability of Business/Debtor to perform the Loan and advised them cease communication and payments with Plaintiff on the Loan, whose monies were instead diverted to the RPI and SAS Defendants under "the program."

101.    Business and Debtor put a stop payment on their account, preventing Plaintiff from debiting further Loan payments, breaching the Loan, refusing to communicate with Plaintiff to cure that issue, on the advice of the RPI Defendants under the "program."

102.    The RPI Defendants wrote Plaintiff in Georgia through Defendant Freeman and stated "We are assisting this *client* in the *restructuring* of this debt, therefore please see our POA attached and *divert* all future communications/correspondences to our *firm*" per the "program."

103.    The RPI Defendants drafted, prepared and had Business and Debtor execute a power of attorney under the "program" that *"authorized"* the RPI Defendants as their *"true and lawful agents"* to *"authorize and instruct creditors to discuss their claims"* with them and *"enter into settlements."* The RPI Defendants emailed the "power of attorney" to Plaintiff.

104.    The above power of attorney "authorized" the RPI Defendants under the "program" to "*communicate [with creditors] regarding "the possibility of bankruptcy should creditors refuse to negotiate in good faith" which was "legally binding and valid upon its signing and shall remain in effect until Regroup receives a formal written revocation."*

105.    Loan payments and communications with Debtor and Borrower ceased and never resumed after the misconduct of the RPI and SAS Defendants under "the program."

106.    Upon information, the RPI and SAS Defendants diverted the funds and property of Business and Debtor under "their program" to pay themselves without paying Plaintiff.

107.    Mathis filed bankruptcy, SD FL Case No. 22-10416, due to a judgment for $403,615.50 resulting from related misconduct by her and the RPI Defendants for offering unauthorized debt relief in Oregon, per the "program" in SD FL Case No.  9:21-cv-80160.

108.    The RPI Defendants committed UPL per the above cases/law, who unlawfully provided advice and services under their "program" requiring legal training, knowledge and skill under their "power of attorney" to "restructure" and "negotiate" and "settle" legal rights under the Loan, including preparing and approving related legal instruments and who communicated with Plaintiff. They charged and received illegal fees for their unlawful services here and acted, advertised or held themselves out as attorneys here. They negligently or intentionally engaged in this misconduct under the "program" to benefit themselves, which was non-privileged.

109.    The RBI Defendants were aided and abetted in this UPL misconduct by SAS of which SAS knew, which provided substantial assistance by processing, disbursing and paying itself from these illegal "fees" under "their program" which they concealed from Plaintiff,

110.    The Loan is a valid, legal contract and business relationship between Plaintiff, Business and Debtor, in which time is of the essence for its performance.

111.   The RPI Defendants knew of the Loan, to which they are strangers, in which they lack any lawful interest, right, or privilege, who had no justification to interfere with the Loan, who cannot practice law in Florida or Georgia and neither can SAS.

112.   The RPI Defendants intentionally, improperly and wrongfully interfered with the Loan and maliciously procured its breach who had Debtor and Business cease Loan payments and communications to injure Plaintiff and benefit themselves, who were aided and abetted by SAS under the "program" which negatively impacted satisfaction of the Loan.

113.   Plaintiff had a reasonable, good faith belief that Debtor and Business would satisfy the Loan, who instead inexplicably breached the Loan and did not cure that breach due to the unlawful interference of the RPI/SAS Defendants which they assumed, adopted and ratified.

114.   The misconduct of the RPI Defendants was intentional, willful, wanton, malicious and oppressive, so reckless and wanting in care to be grossly negligent, who were consciously indifferent to its consequences, which they ratified, in which SAS assisted, participated, aided, abetted and ratified, working with the RPI Defendants for this unlawful purpose.

115.   Plaintiff was proximately and actually damaged by the misconduct of the RPI and SAS Defendants, who caused its Loan to be breached, which was never cured, whose bad-faith misconduct was willful, knowing and illegal, which they assumed, adopted and ratified.

116.   Plaintiff demands judgment as to the RPI/SAS Defendants for their misconduct such as compensatory, consequential special, nominal and punitive damages, costs, reasonable attorney's fees and just relief, holding them in contempt and enjoining their unlawful acts.

## COUNT VI:  CONSPIRACY
## AS TO RPI/SAS DEFENDANTS

117.    ¶¶ 1-34 and 60-109 are incorporated.

118.    The RPI/SAS Defendants had a conspiracy, a common design to interfere with Plaintiff's Loan, each sharing intent and knowledge to accomplish this goal by concerted action by unlawful purposes and/or lawful purposes by unlawful means: their "program."

119.    The RPI/SAS Defendants committed overt acts to further their conspiracy, such as soliciting Business and Debtor to enroll in "the program" and wrongfully procuring the breach of Plaintiff's Loan, with their illegal, worthless services, inducing them to cease payments and communications in which SAS participated and effectuated.

120.    The RPI/SAS Defendants made their agreements to perform aspects of their illegal conspiracy in concert, and divide compensation generated from their scheme among themselves per "their program."

121.    The misconduct of the RPI Defendants was intentional, willful, wanton, malicious and oppressive, reckless and wanting in care to be grossly negligent, with conscious indifference to its consequences, which they ratified, in which the SAS Defendants assisted, participated, aided, abetted and ratified, retained by the RPI Defendants for this unlawful purpose.

122.    Plaintiff was proximately and actually damaged by the misconduct of the RPI and SAS Defendants, who caused its Loan to be breached, which was never cured, whose bad-faith misconduct was willful, knowing and illegal, which they assumed, adopted and ratified.

123.    Plaintiff demands judgment as to the RPI/SAS Defendants for their conspiracy for compensatory, consequential, special, nominal and punitive damages of at least $76,000.00, costs and all just relief including an injunction barring further interference with Plaintiff's loans.

124.    Defendants are not minor(s) or adjudged incompetent; were not in the military for the last 30 days and are not subject to protection under 50 U.S.C. § 3901.

Respectfully submitted this 25th day of February 2022.

By:    */s/Paul G. Wersant*_____
Paul G. Wersant
Florida Bar No. 48815
3245 Peachtree Parkway, Suite D-245
Suwanee, Georgia 30024
Telephone: (678) 894-5876
Email: pwersant@gmail.com
Attorney for Plaintiff IOU
File No. 131564